**[J-14-2025] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| JOHN BROWN, | : | No. 22 WAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered December 7, |
| | : | 2023, at No. 1132 WDA 2021, |
| v. | : | reversing and remanding the Order |
| | : | of the Court of Common Pleas |
| | : | Allegheny County Civil Division |
| GEORGE GAYDOS, AN INDIVIDUAL, | : | entered April 16, 2021, at No. GD |
| T/D/B/A GAYDOS CONSTRUCTION, | : | 18-006991. |
| | : | |
| Appellant | : | ARGUED: April 8, 2025 |

**DISSENTING OPINION**

**JUSTICE WECHT**                    **DECIDED: FEBRUARY 18, 2026**

George Gaydos, co-owner of American Concrete Solutions, Inc., claims co-employee immunity from civil liability for injuries John Brown suffered while working at an American Concrete Solutions jobsite. The Majority concludes that Brown raised "genuine issues of material fact related to whether some of Gaydos's allegedly negligent acts or omissions occurred while he was in the same employ as Brown."[1] Thus, the Majority affirms the Superior Court's reversal of the trial court's order which had granted summary judgment to Gaydos. I disagree.

Section 205 of the Workers' Compensation Act ("WCA" or "the Act"), immunizes co-employees from civil liability as follows:

If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the

---

[1]    Maj. Op. at 20.

same employ as the person disabled or killed, except for intentional wrong.[2]

In *Apple v. Reichert*, we affirmed the application of this statutory immunity to those "in the same employ."[3]  *Apple* and Section 72 demonstrate that immunity should apply.  Hence, I respectfully dissent.

The Majority misconstrues *Apple*.  The Majority asserts that *Apple* held that the defendant there was immune pursuant to Section 72 "because she was acting in the course and scope of her employment."[4]  I disagree.

A brief review of *Apple* is instructive.  Bonner, a teacher, was driving her colleague Apple from one school to another, whereupon they were involved in an accident with another car.  Apple sued Bonner and the other driver for her injuries.  The trial court determined that both Apple and Bonner "were acting within the scope of their employment and in the course of their employer's business."[5]  Therefore, the trial court ruled that immunity applied and that Bonner was entitled to a compulsory nonsuit.  Before this Court, Apple argued that, while she and Bonner were acting within the course of their employment, they were not acting with the scope of their employment when the accident occurred.  As such, Apple maintained, immunity should not apply.

---

[2]     77 P.S § 72.  Some cases refer to Section 72 as Section 205.  This is because there is a tradition in workers' compensation law to refer to the section number in the original enacting legislation and the amendments thereto rather than the section number as later codified. Like the Majority, I refer to this as Section 72 for purposes of this opinion.

[3]     278 A.2d 482 (Pa. 1971).

[4]     Maj. Op. at 16.

[5]     *Apple*, 278 A.2d at 483.

This Court disagreed. The Court focused upon whether the two teachers "were 'in the same employ.'"[6] It concluded that they were.[7] The Court explained that Apple and Bonner were "proceeding from one place of employment to another during their working day, acting in furtherance of their duties at the time, and in a manner approved by their employer."[8] The Court stated:

> Since the language of the statutory provision sets up a clear and simple test—'the same employ'—and *such words as scope of employment and course of employment are not used*, we are not free to speculate that a more restrictive intention was envisioned by the legislature.[9]

This Court suggested that, had scope of employment been relevant, there would have been no doubt that the teachers were both acting within that scope.[10] The Court concluded that the Act "protect[s] all co-employes [*sic*] in all situations where negligent conduct of one employe [*sic*] may cause injury to a fellow employe [*sic*], provided only that the injury in question is one that is compensable under the Act."[11]

Rather than adopting course and scope of employment, the *Apple* Court concluded that the Act made "in the same employ" the only relevant consideration. Although the Court conceded that the two teachers were acting in the scope of their employment, it refused to add terms that were not in the statute. Thus, I cannot accept the Majority's characterization of *Apple*'s holding as dependent upon both the course and the scope of employment.

---

[6] *Id.* at 484.

[7] *Id.*

[8] *Id.*

[9] *Id.* (emphasis added).

[10] *Id.*

[11] *Id.* at 485.

Regardless, "course of employment" necessarily is an inherent component of Section 72. The section limits co-employee immunity to circumstances in which "disability or death is compensable under this act." Because the Act provides for compensation for injuries occurring "in the course of [the injured worker's] employment,"[12] co-employee immunity necessarily can apply only when the injury occurs during the course of employment. This, in turn, limits the scope of immunity available under the Act.

After reviewing *Apple*, the Majority examines the plain language of Section 72. It concludes that there is a temporal element to the act or omission that causes the injury. Therefore, in order to gain immunity, the Majority reasons, one must prove that there was a compensable injury under the Act and "must also show that the act or omission occurred while the party was in the same employ as the injured worker."[13]

Gaydos argues for a much broader immunity. He maintains that the only relevant considerations are "a showing of co-employment and a compensable injury under the WCA."[14] The Majority describes it this way: "Gaydos argues that Section 72 provides immunity to every co-employee employed by the same employer, seemingly regardless of any consideration for when the negligent act occurred or the time, place, or circumstances of the accident."[15]

The Majority is correct that there is a temporal element to Section 72, and that this element provides a limiting factor to immunity. But I would describe it differently. An injury must be one that is compensable, which means that it must be one that occurs in the course of employment, not simply while the parties are in the same employ. The

---

[12]    77 P.S. § 431.

[13]    Maj. Op. at 18.

[14]    Gaydos' Brief at 36.

[15]    Maj. Op. at 14.

temporal element refers to the fact that the employees must be acting as employees at the time of the accident. A hypothetical will illustrate the point. Suppose two law clerks who work for the same judge are running personal errands on a Saturday and happen to suffer a car accident. Section 72 would not apply. Any resulting injury would not be compensable, since that injury did not occur during the course of employment. If, on the other hand, the same law clerks were driving separately to a court session and suffered a car accident en route, Section 72 immunity would apply; they were acting within the course of their employment and were in the same employ at the time of the accident. However, if one law clerk was driving to a court session and suffered a car accident along with a second law clerk who was taking a personal day, then Section 72 immunity likely would not apply. The first law clerk would have a WCA-compensable injury because that clerk was in the course of employment. The second law clerk was not acting in the course of employment and therefore was not in the same employ at the time of the accident. Immunity would not apply. The relevant question per Section 72 is whether the employees were "in the same employ" at the time that the compensable disability occurred.

I share the *Apple* Court's reticence to add to this, or to any, statute. Section 72 is written broadly, encompassing any act (absent intentional harm) which causes a compensable injury that occurs at a time when the parties are in the same employ. A broad reading comports with the Act's broad grant of immunity to employers. It makes sense for a commensurately broad immunity to apply to co-employees. As the *Apple* Court warned, "we are not free to speculate that a more restrictive intention was envisioned by the legislature."[16] However, the scope of immunity for which Gaydos argues is too broad, and it is unnecessary for such immunity to apply in this case.

---

[16] *Apple*, 278 A.2d at 483.

The Majority concludes that there is a material issue of fact because it is alleged that Gaydos owned and maintained the skid loader as an individual, thereby raising the possibility that the negligent maintenance may have occurred when Gaydos and Brown were not in the same employ. The Majority views the relevant time as the juncture at which the maintenance took place. However, the relevant act or omission for the purpose of applying Section 72 was the use of the skid loader. This occurred at the job site, while Brown and Gaydos were furthering the business of their employer. Gaydos owed Brown no duty of care outside of the workplace. If Gaydos is negligent in how he maintains his personal equipment, that is his own concern. Such negligence would become relevant only when the equipment is brought to the job site and Brown uses it. Returning to my prior hypothetical, if the accident on the way to a court session is caused by one law clerk's negligent failure to maintain the personal vehicle, this does not mean that the two law clerks are not in the same employ at the point in time that the accident occurs.

As to whether there are remaining genuine issues of material fact, I largely agree with the dissent below. There, Judge Stabile opined that the facts (particularly those upon which the Superior Court majority relied to conclude summary judgment was improper) are generally irrelevant to this analysis. The dissent states:

> The Majority lists some admissions from Gaydos that it believes create a genuine issue of material fact. Among these are that Gaydos owned and maintained the skid loader, that his sole proprietorship, Gaydos Construction, paid for the insurance policy on it, and that he occasionally loaned the skid loader to ACS [American Concrete Solutions, Inc.] for use in its work. *Brown v. Gaydos*, 306 A.3d 883, 894–95 (Pa. Super. 2023). The Majority also notes that the agreement between Gaydos and [the co-owner of ACS] to loan their personal tools to ACS was not in writing, and that there was no lease agreement or transfer of money between ACS and [the co-owner] or Gaydos whenever one of them lent a tool or piece of equipment to ACS. *Id.* at 893–94. Common amongst all these facts is that they have no bearing on whether Gaydos and Brown were in the same employ under § 72 as construed by *Apple*. Gaydos' ownership, maintenance, and insurance of the skid loader, and the terms under which he lent his personal equipment to ACS for use in ACS jobs, is beside the

point. The point is that Brown's WCA-compensable injury happened at an ACS jobsite when Brown and Gaydos were co-employees of ACS. Section 72 protects all co-employees in all such situations. *Apple*, 278 A.2d at 484.

The Majority also relies on Gaydos' instruction that no one but him was to operate the skid loader. *Brown*, 306 A.3d at 893–95. But the Majority fails to explain how the apparent lack of adherence to that instruction strips Gaydos of § 72 immunity. The *Apple* Court's description of the parties' conduct in that case—that both parties were acting in a manner approved by their employer (*Apple*, 278 A.2d at 484)—might be relied upon to strip a defendant of § 72 immunity if the defendant co-employee causes an injury while acting contrary to the employer's express instructions. But that is not the case before us. Here, the evidence is that Gaydos and [the co-owner] agreed that they would supply their personal equipment for ACS jobs, and that Gaydos' skid loader had been used at ACS jobs on multiple occasions in the past. Thus, Gaydos was acting in accord with ACS practice in providing his skid loader. His instruction regarding its use has no bearing on whether he and Brown were in the same employ.

The Majority also reaches the extraordinary conclusion that there is a "genuine issue of material fact as to whether Gaydos actually intended to use the skid loader at the jobsite on the morning in question." *Brown*, 306 A.3d at 894, 895. This is because Gaydos, in his deposition, "did not mention whether he brought the skid loader to the job site that morning for a particular purpose which related to that particular job." *Id.* at 894. The Majority's conclusion is unsupportable under both law and fact. The law provides that we must draw all **reasonable** inferences in favor of Brown, as the non-moving party against whom summary judgment was granted. The facts, as the Majority acknowledges, are that that Gaydos commonly (on 15 occasions between April and September of 2016) lent his skid loader to ACS for use in its jobs, and that Gaydos' skid loader was at an ACS jobsite on the morning of Brown's injury. Yet the Majority concludes that it is reasonable to infer from these facts that Gaydos' skid loader was present at the ACS jobsite on the morning of Brown's injury for some purpose other than the job at hand. To state that conclusion is to refute it. Furthermore, the purpose of the skid loader's presence at the jobsite, like the other facts discussed just above, is beside the point. It has no bearing on whether Brown and Gaydos were within the same employ when Brown was injured.

Finally, the Majority notes that Brown sued Gaydos in his own right as owner of the skid loader; he did not sue Gaydos as his employer or co-employee. *Id.* at 894–95. Again, this issue is beside the point. The language in Brown's pleading does not and cannot answer the substantive question before us.

*Brown v. Gaydos*, 306 A.3d 883, 898–99 (Pa. Super. 2023) (Stabile, J., dissenting) (citations modified or omitted; emphasis in original).[17]

Today's Majority relies upon some of these same circumstances on its way to finding a genuine issue of material fact.[18]  Like Judge Stabile, I fail to see how the ownership of the skid loader or the question of whether there was a written agreement between the co-owners of the company regarding equipment rental have any bearing on whether Brown and Gaydos were in the same employ.

The *Apple* court focused the inquiry not upon scope of employment, but upon whether the parties were "acting in furtherance of their duties at the time, and in a manner approved by their employer."[19]  Here, Gaydos and Brown were both furthering their duties — Brown at the worksite and Gaydos off-site, paying a vendor.[20]  Nothing suggests that the two were not acting in a manner approved by their employer.  I see no question as to whether they were acting in the same employ.  Section 72 extends immunity.  Thus, I would reverse.

---

[17]    The Superior Court dissent also criticized the panel majority for relying upon *Bell v. Kater*, 943 A.2d 293 (Pa. Super. 2008), and *Fern v. Ussler*, 630 A.2d 896 (Pa. Super. 1993).  *See Brown*, 306 A.3d at 897-98 (Stabile, J. dissenting) (stating that "*Bell* and *Fern* are of no precedential value for the issue presently before us, a fact the Majority seems reluctant to acknowledge.").  Today's Majority concedes "the limited precedential value of those cases." Maj. Op. at 5 n.4.  I, too, question the Superior Court's use of those cases. *Bell*'s commentary on co-employee immunity is *dicta* at best, as the *Bell* court determined that the defense of immunity had been waived.  The *Bell* court speculated as to whether immunity might have applied had it not been waived.  In these musings, the *Bell* court relied upon *Fern* without noting that *Fern* was a plurality decision with no precedential value on this issue.  More pertinent case law existed, as cited by the dissent below, so there was no reason to rely upon *dicta* offered in *Bell*, based upon the nonprecedential decision in *Fern*.

[18]    Maj. Op. at 18-19.

[19]    *Apple*, 278 A.2d at 484.

[20]    *See* Trial Court Opinion, 7/13/2021, at 6.